514 S.E.2d 788

**Michael Joseph DeAMICIS**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1240–98–1.**

Court of Appeals of Virginia,
Norfolk.

May 25, 1999.

Edward S. Whitlock, III (Dankos, Gordon & Whitlock, on brief), Richmond, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON and BRAY, JJ., and OVERTON, Senior Judge.

BRAY, Judge.

Michael Joseph DeAmicis (defendant) was convicted in a bench trial of taking indecent liberties with a minor, a felony, in violation of Code § 18.2–370.1, and contributing to the delinquency of a minor, a misdemeanor, in violation of Code § 18.2–371. On appeal, defendant challenges the sufficiency of the evidence to support the convictions. Because we find that the evidence established the felony but failed to prove the misdemeanor, we affirm in part and reverse in part.

In reviewing the sufficiency of the evidence, we examine the record in the light most favorable to the Commonwealth, granting to it all reasonable inferences deducible therefrom. *See Martin v. Commonwealth,* 4 Va.App. 438, 443, 358 S.E.2d 415, 418 (1987). "An appellate court must discard all evidence of the accused that conflicts with that of the Commonwealth...." *Lea v. Commonwealth,* 16 Va.App. 300, 303, 429 S.E.2d 477, 479 (1993) (citation omitted). The credibility of witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. *See Long v. Commonwealth,* 8 Va.App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of a trial court will be disturbed on appeal only if plainly wrong or unsupported by the evidence. *See* Code § 8.01–680.

In November 1996, V.S.[1] was experiencing difficulties with her daughter, E.A., then 16. The teenager "was having problems" with "anxiety attacks," school attendance, drugs,

---

**1.** To avoid unnecessary embarrassment to the victim and her mother, we use pseudonyms for each.

"sexual promiscuity," and had attempted suicide. Previous counseling had not been helpful, and V.S., on the advice of a friend, contacted defendant, then age 46 and a reputed "psychologist." Defendant assured V.S. that "he was licensed, had been to school," and, after a brief conversation, agreed to be "[E.A.'s] counselor, . . . her psychologist."

V.S. immediately brought E.A. to defendant's home for an initial conference, but E.A. "instantly realized that she was there for counseling[,] . . . made a scene" and vowed that she "was not coming back." "[D]istraught," V.S. ended the meeting but, later, telephoned defendant for further guidance. Defendant commented that he found E.A. "very bright, very intelligent[,] . . . a beautiful child[,] . . . a gorgeous child," and proposed that he "take and counsel her through modeling, . . . then she would not realize that she was being counseled."

After a few days, V.S. and E.A. returned to defendant's residence, V.S. intending to pursue defendant's novel approach to counseling E.A. Defendant advised V.S. that "[h]e wanted complete control of [E.A.]. . . . [V.S.] was never to question [E.A.] . . . as to their sessions, that if [she] had any questions, [she] was to go to him, that he needed [E.A.'s] complete confidence in him . . . [s]o that he could counsel her and try to help her through this time in her life." Defendant's counseling services would be without charge, provided he was reimbursed photography expenses and assured a percentage of E.A.'s subsequent earnings as a model. V.S. accepted defendant's terms, the two agreed that defendant and E.A. would regularly meet, alone, in V.S.'s home, and the sessions began in late 1996. At defendant's suggestion, V.S. removed E.A. from public school and undertook home schooling.

During the ensuing months, V.S. spoke with defendant after each meeting with E.A. and was assured by him that E.A. "was doing wonderful." When V.S. voiced concern to defendant that E.A. "was staying in bed," neglecting her "home study course," "not going out, . . . wasn't going anywhere" and "getting progressively worse in her depression," he "kind of brushed [these issues] off."

E.A. testified that she first thought that defendant was "just a photographer" but learned, "while he was taking pictures," that defendant was also her counselor. She acknowledged that she "was in a rough state at the time" and agreed to participate only after V.S. "pushed it on [her]." E.A. recalled that defendant selected and arranged her clothing and pose for each photograph and promised that the "angle" would reveal no nudity. When E.A. asked "why he took so many slutty shots," defendant answered, "sex sells."

In the Spring of 1997, E.A. disappeared for several days, and, on the floor of her room, V.S. discovered numerous photographs of E.A., which depicted her sexual and genital areas, inside a "notebook" that belonged to defendant. V.S. immediately terminated all contact between defendant and E.A. and alerted local police to the situation. During the resulting investigation, defendant admitted that he had taken photographs of E.A. which revealed her sexual and genital parts. Meanwhile, E.A. returned to public school and soon evidenced much improved academic performance, motivation, ambition, and otherwise constructive behavior.

Defendant testified that his relationship with V.S. and E.A. began when V.S. contacted him and described E.A.'s "problems." During their initial conversation, he "ascertained that [E.A.] was interested in modeling," and volunteered to V.S., "I do photography work." After further discussion with V.S., defendant admitted that he agreed to prepare a photographic "portfolio" of E.A. to advance her modeling career, but denied any attendant counseling responsibilities. He also denied photographing E.A.'s sexual or genital parts, although on cross-examination he identified several photos of E.A., taken by him, which depicted her exposed breasts.

## I.

Defendant first argues that the evidence failed to establish the existence of a custodial or supervisory relation-

ship between E.A. and himself, an indispensable element to a violation of Code § 18.2–370.1.

Code § 18.2–370.1 provides, in pertinent part, that

[a]ny person eighteen years of age or older who maintains a custodial or supervisory relationship over a child under the age of eighteen, including but not limited to the parent, step-parent, grandparent, step-grandparent, or who stands in loco parentis with respect to such child and is not legally married to such child, and who, with lascivious intent, knowingly and intentionally . . . (iv) proposes that any such child expose his or her sexual or genital parts to such person . . . shall be guilty of a Class 6 felony.

"[T]he Supreme Court has rejected limiting the definition of 'custody' to legal custody," "defined generally as '[t]he care and control of a thing or person.'" *Krampen v. Commonwealth,* 29 Va.App. 163, 167–68, 510 S.E.2d 276, 278 (1999) (quoting *Black's Law Dictionary* 384 (6th ed.1990)); *see Lovisi v. Commonwealth,* 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972). Thus, the "custodial or supervisory relationship" contemplated by the statute "is not limited to those situations where legal custody exists." *Id.* at 168, 510 S.E.2d at 278. "The term also includes those individuals eighteen years or older who have a temporary, custodial relationship with a child, such as, 'teachers, athletic instructors and baby-sitters.'" *Id.* (quoting *Lovisi,* 212 Va. at 850, 188 S.E.2d at 208).

Here, the evidence clearly established that V.S. entrusted E.A. to the care, custody, and control of defendant for purposes of professional counseling. At defendant's suggestion, V.S. agreed to the photography and modeling ruse to bring needed help to E.A., without encountering her resistance. Defendant demanded "complete control" of E.A., without question or interference from V.S. During the sessions, he was alone with the child and directed the style and arrangement of her clothing, the pose and setting for each photograph. Both V.S. and E.A. complied with defendant's instructions until V.S. discovered his misdeeds. Under such circumstances, defendant and V.S. created a temporary custo-

dial relationship between defendant and E.A. for the duration of each session, thereby submitting E.A. to his control within the purview of Code § 18.2-370.1.

## II.

■ Defendant next contends that the evidence was insufficient to establish that his conduct "caused [E.A.] to be in need of services," the element of Code § 18.2-371 expressly charged in the subject indictment.

Code § 18.2-371 provides, in relevant part, that:

[a]ny person eighteen years of age or older, including the parent of any child, who (i) willfully contributes to, encourages, or causes any act, omission, or condition which renders a child ..., in need of services, ... as defined in § 16.1-228, ... shall be guilty of a Class 1 misdemeanor.

Code § 18.2-371.[2] Code § 16.1-228 defines a "child in need of services" as "a child whose behavior, conduct or condition presents or results in a serious threat to the well-being and physical safety of the child." Provided,

[h]owever, to find that a child falls within these provisions, (i) the conduct complained of must present a clear and substantial danger to the child's life or health or (ii) the child or his family is in need of treatment, rehabilitation or services not presently being received, and (iii) the intervention of the court is essential to provide the treatment, rehabilitation or services needed by the child or his family.

Code § 16.1-228. Thus, for a child to be "in need of services" as an element of Code § 18.2-371, circumstances specified in either Code § 16.1-228(i) *or* (ii) must have rendered court "intervention ... essential" to resolve the difficulty.

Here, defendant's felonious conduct clearly endangered E.A.'s "life or health." When V.S. surrendered temporary custody of E.A. to defendant, he was aware that she was an

---

**2.** Although Code § 18.2-371 proscribes conduct which visits any one among several adverse circumstances upon a child, only rendering a child "in need of services" is before us on the instant record.

emotionally troubled teenager, with a history of attempted suicide, entrusted to him for purposes of professional counseling. However, callous of the child's psychological fragility, defendant criminally violated the custodial relationship and exacerbated E.A.'s symptoms. The resulting circumstances presented a clear and present danger to E.A.'s life and health.

However, the Commonwealth's evidence must also establish that judicial intervention was "essential" to relieve the child's plight, a proof belied by the instant record. Fortunately, V.S. uncovered defendant's crime before further harm came to the child and resolved the immediate threat by removing her from defendant's control. Subsequently, *without* the necessity of court intervention, E.A.'s situation quickly improved. Thus, the evidence established that E.A. was not a child in need of services contemplated by Code § 18.2–371.

We, therefore, find that the record sufficiently supported the conviction of defendant for a violation of Code § 18.2–370.1, but failed to prove a violation of Code § 18.2–371. Accordingly, we affirm the felony conviction but reverse the misdemeanor.

*Affirmed in part, reversed in part, and final judgment.*