COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Coleman, Elder,
          Bray, Annunziata, Bumgardner, Lemons and Frank
Argued at Richmond, Virginia


MICHAEL JOSEPH DeAMICIS
                                              OPINION BY
v.   Record No. 1240-98-1              JUDGE RICHARD S. BRAY
                                          FEBRUARY 1, 2000
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
John E. Clarkson, Judge Designate

No brief or argument for appellant.

H. Elizabeth Shaffer, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


     Michael Joseph DeAmicis (defendant) was convicted in a

bench trial for taking indecent liberties with a minor, a

felony, in violation of Code § 18.2-370.1, and contributing to

the delinquency of a minor, a misdemeanor, in violation of Code

§ 18.2-371.  On appeal, defendant challenged the sufficiency of

the evidence to support the convictions.  A panel of this Court

found the evidence sufficient to support the felony but reversed

the misdemeanor conviction.  See DeAmicis v. Commonwealth, 29

Va. App. 751, 514 S.E.2d 788 (1999).  We granted the

Commonwealth's petition for rehearing en banc, and "the appeal

[was] reinstated on the docket of this Court."  Upon such rehearing, we affirm both convictions.

In reviewing the sufficiency of the evidence, we consider the record "'in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom. In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth . . . .'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 404 S.E.2d 856, 866 (1998) (citation omitted).  The credibility of the witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  "When weighing the evidence, the fact finder is not required to accept entirely the Commonwealth's or defendant's account of the facts," but "may reject that which it finds implausible, [and] accept other parts which it finds to be believable."  Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).  The judgment of the trial court, finding guilt beyond a reasonable doubt, will not be set aside unless plainly wrong or unsupported by the evidence.  See Code § 8.01-680.

In November, 1996, V.S.[1] was experiencing difficulties with her daughter, E.A., then 16.  The teenager "was having problems" with "anxiety attacks," school attendance, drugs and "sexual promiscuity," and had attempted suicide.  Previous counseling had not been helpful, and V.S., acting on the advice of a friend, contacted defendant, a reputed "psychologist."  Defendant assured V.S. that "he was licensed, had been to school," and, after a brief conversation, agreed to be "[E.A.'s] counselor, . . . her psychologist."

V.S. immediately brought E.A. to defendant's home for an initial conference, but E.A. "instantly realized that she was there for counseling[,] . . . made a scene" and vowed that she "was not coming back."  "[D]istraught," V.S. ended the meeting and, later, telephoned defendant for further guidance.  During their conversation, defendant commented that he found E.A. "very bright, very intelligent[,] . . . a beautiful child[,] . . . a gorgeous child," and suggested that he "take and counsel her through modeling, . . . then she would not realize that she was being counseled."

After a few days, V.S. and E.A. returned to defendant's residence, V.S. intending to pursue defendant's novel approach to counseling E.A.  Defendant advised V.S. that "[h]e wanted complete control of [E.A.] . . . . [V.S.] was never to question

---

[1] To avoid unnecessary embarrassment to the victim and her mother, we use pseudonyms for each.

[E.A.] . . . as to their sessions, that if [she] had any questions, [she] was to go to him, that he needed [E.A.'s] complete confidence in him . . . [s]o that he could counsel her and try to help her through this time in her life." Defendant proposed that the counseling services be without charge, provided he was reimbursed photography expenses and received a percentage of E.A.'s anticipated earnings as a model. V.S. accepted defendant's terms, and the two agreed that defendant and E.A. would regularly meet, alone, in V.S.'s home, beginning in late 1996. At defendant's suggestion, V.S. subsequently removed E.A. from public school and undertook home schooling.

During the ensuing months, V.S. spoke with defendant following each session with E.A. and was assured that E.A. "was doing wonderful." When V.S. voiced concern to defendant that E.A. "was staying in bed," neglecting her "home study course," "not going out, . . . wasn't going anywhere" and "getting progressively worse in her depression," he "kind of brushed [these issues] off."

E.A. testified that she first believed that defendant was "just a photographer" but later learned, "while he was taking pictures," that he was also her counselor. She acknowledged that she "was in a rough state at the time" and agreed to participate in the arrangement with defendant only after V.S. "pushed it on [her]." E.A. recalled that defendant selected and arranged her clothing and pose for each photograph and promised

that the "angle" would reveal no nudity.  When E.A. asked "why he took so many slutty shots," defendant answered, "sex sells."

In the Spring of 1997, E.A. "disappeared" for several days, and, on the floor of her room, V.S. discovered numerous photographs of E.A., which depicted her sexual and genital areas, inside a "notebook" that belonged to defendant.  V.S. immediately terminated all contact between defendant and E.A. and notified local police of her findings.  During the resulting investigation, defendant admitted that he had taken photographs of E.A. which revealed her sexual and genital parts.  Meanwhile, E.A. returned to public school and soon evidenced much improved academic performance, motivation, emotional stability, and otherwise positive behavior.

Defendant testified that his relationship with V.S. and E.A. began when V.S. contacted him and described E.A.'s "problems."  During their initial meeting, he "ascertained that [E.A.] was interested in modeling," and advised V.S., "I do photography work."  Defendant admitted that he subsequently agreed to prepare a photographic "portfolio" of E.A. to advance her modeling career, but denied any attendant counseling responsibilities.  He first denied photographing E.A.'s sexual or genital parts, but, during cross-examination, identified several photos of E.A., taken by him, which depicted her exposed breasts.

I.

Defendant first argues that the evidence failed to establish the existence of a custodial or supervisory relationship between E.A. and himself, an indispensable element to a violation of Code § 18.2-370.1.

Code § 18.2-370.1 provides, in pertinent part, that

> [a]ny person eighteen years of age or older who maintains a custodial or supervisory relationship over a child under the age of eighteen, including but not limited to the parent, step-parent, grandparent, step-grandparent, or who stands in loco parentis with respect to such child and is not legally married to such child, and who, with lascivious intent, knowingly and intentionally . . . (iv) proposes that any such child expose his or her sexual or genital parts to such person . . . shall be guilty of a Class 6 felony.

"[T]he Supreme Court has rejected limiting the definition of 'custody' to legal custody," "defined generally as '[t]he care and control of a thing or person.'" Krampen v. Commonwealth, 29 Va. App. 163, 167-68, 510 S.E.2d 276, 278 (1999) (quoting Black's Law Dictionary 384 (6th ed. 1990)); see Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972). Thus, the "custodial or supervisory relationship" contemplated by the statute "is not limited to those situations where legal custody exists." Krampen, 29 Va. App. at 168, 510 S.E.2d at 278. "The term also includes those individuals eighteen years or older who have a temporary, custodial relationship with a child, such as, 'teachers, athletic instructors and

baby-sitters.'"  Id. (quoting Lovisi, 212 Va. at 850, 188 S.E.2d at 208).

Here, the evidence clearly established that V.S. entrusted E.A. to the care, custody, and control of defendant for purposes of professional counseling.  At defendant's suggestion, V.S. agreed to the photography and modeling ruse to gain E.A.'s cooperation in the professional care promised by defendant. Defendant demanded "complete control" of E.A., free from question or interference from V.S.  During sessions with E.A., he was alone with the child and directed the style and arrangement of her clothing, the pose and setting for each photograph.  Both V.S. and E.A. submitted themselves to defendant's direction until V.S. discovered his misdeeds.  Such circumstances clearly created a temporary custodial relationship between defendant and E.A. for the duration of each session, submitting E.A. to defendant's control within the purview of Code § 18.2-370.1.

## II.

Defendant next contends that the evidence was insufficient to prove conduct that "caused [E.A.] to be in need of services," one of several disjunctive elements enumerated in Code § 18.2-371, all of which were charged in the subject indictment.[2]

---

[2] The Commonwealth addressed only this issue both before the original panel and en banc.

Code § 18.2-371 provides, in pertinent part, that:

> [a]ny person eighteen years of age or older,
> including the parent of any child, who (i)
> willfully contributes to, encourages, or
> causes any act, omission, or condition which
> renders a child delinquent, in need of
> services, or abused and neglected as defined
> in § 16.1-228, . . . shall be guilty of a
> Class 1 misdemeanor.

Code § 18.2-371.  Code § 16.1-228 defines a "child in need of services" as "a child whose behavior, conduct or condition presents or results in a serious threat to the well-being and physical safety of the child."  The statute further provides,

> [h]owever, to find that a child falls within
> these provisions, (i) the conduct complained
> of must present a clear and substantial
> danger to the child's life or health or (ii)
> the child or his family is in need of
> treatment, rehabilitation or services not
> presently being received, and (iii) the
> intervention of the court is essential to
> provide the treatment, rehabilitation or
> services needed by the child or his family.

Code § 16.1-228.

Defendant, therefore, posits that conviction for a violation of Code § 18.2-371 arising from a child "in need of services" requires a showing that "intervention of the court" is "essential" to the remedy.  We need not address this argument, however, because Code § 18.2-371 also proscribes conduct "which renders a child . . . <u>abused and neglected</u> . . . as defined in Code § 16.1-228," an alternate circumstance specifically alleged in the indictment.  Code § 18.2-371 (emphasis added).

Code § 16.1-228 defines an "abused or neglected child" as,

inter alia,

> any child:
>
> 1.  Whose parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions;
> . . . .

Code § 16.1-228. Defendant's felonious conduct with respect to the child clearly "create[d]" or "inflict[ed], [or] threaten[ed] to create or inflict . . . upon such child a . . . mental injury by other than accidental means," behavior constituting abuse and neglect contemplated by definition of Code § 16.1-228 and, therefore, violative of Code § 18.2-371.[3]

Accordingly, the record sufficiently supported convictions for violations of both Code § 18.2-370.1 and -371, and we affirm the trial court.

Affirmed.

---

[3] After reciting that defendant was "tried" upon an indictment charging that he "did unlawfully contribute to, encourage, or cause an act, omission or condition which rendered a minor female child in need of services, abused or neglected," in violation of Code § 18.2-371, the subject conviction order "finds . . . defendant guilty" of the alleged offense, without further particularizing the underlying conduct. (Emphasis added.)

Benton, J., concurring, in part and dissenting, in part.

I concur in Part I of the majority opinion and would affirm the conviction for violating Code § 18.2-370.1.  I do not join in Part II and, for the reasons that follow, I would reverse the conviction for violating Code § 18.2-371.

The indictment charged that "Michael Joseph DeAmicis, an adult, did unlawfully contribute to, encourage, or cause an act, omission, or condition which rendered a minor female child in need of services, abused, or neglected [in violation of] . . . Code § 18.2-371.  At trial, the prosecutor argued that the evidence proved that the teenage child was rendered in need of services by DeAmicis' conduct.

For the reasons more fully stated in the panel's opinion, see DeAmicis v. Commonwealth, 29 Va. App. 751, 757-58, 514 S.E.2d 788, 791-92 (1999), I would hold that the evidence failed to prove the teenage child was rendered in need of services.  Furthermore, no evidence established that she suffered from a mental injury or any other injury from DeAmicis' conduct.  As the majority notes, before the teenage child met DeAmicis, she "'was having problems' with 'anxiety attacks,' school attendance, drugs, 'sexual promiscuity,' and had attempted suicide."  She had also unsuccessfully participated in other counseling sessions.  Although DeAmicis violated Code § 18.2-370.1 while photographing the teenage child, no evidence proved the child was rendered in need of services or suffered

injuries by his conduct.  Rather, the evidence proved that after her "counseling" with DeAmicis she "returned to public school and soon evidenced much improved academic performance, motivation, ambition, and otherwise constructive behavior."  On this record, the evidence failed to prove the violation of Code § 18.2-371 alleged by the Commonwealth.