UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judge Decker and Senior Judge Clements
Argued at Richmond, Virginia

JAMES SETH BROWN

MEMORANDUM OPINION[*] BY
v.      Record No. 1737-14-2         JUDGE MARLA GRAFF DECKER
                                JULY 21, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

John D. Mayoras (Spencer, Mayoras, Koch, Cornick, & Meyer, PLC,
on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

James Seth Brown appeals his convictions, in a bench trial, for failure to appear, in violation

of Code § 19.2-128, and contributing to the delinquency of a minor, in violation of Code

§ 18.2-371. He argues that the evidence was insufficient to support his convictions because the

trial court did not find that he intentionally missed his hearing and the Commonwealth did not

prove that he willfully left his child unsupervised. We hold that the evidence was sufficient to

establish the challenged elements of the offenses and, therefore, we affirm the convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

On May 30, 2013, Pamela Kelley was working at the front desk of a hotel in Fredericksburg. At about 5:00 a.m., she received a call from a guest. The guest had discovered a toddler "outside of the hotel by one of the entrance doors," which Kelley explained led to the parking lot. Kelley called the police department for assistance and instructed a hotel security guard to retrieve the child. The two-year-old boy was wearing only a diaper. None of the guests staying at the hotel had registered a small child. The police arrived and began an investigation. Child Protective Services (CPS) took the child into custody.

After learning that the appellant and his co-defendant, Courtney Love Brown, were reported to have a young child with them in the hotel, the police went to their room. The officers received no response when they knocked on the door. Ben Johnson, a detective with the Fredericksburg Police Department, entered the room. He found the room in disarray, and he saw what appeared to be drug paraphernalia in plain view. Johnson obtained a search warrant and then returned to the room. He located three pill bottles, two bearing the appellant's name and one bearing the name of his co-defendant. The bathtub was full of water. Near the television stand, Johnson found a cut soda straw and a napkin with white powdery residue on it.

Later that day, law enforcement found the appellant, the child's father, outside "in the area" of the hotel. Courtney Love Brown, the mother, went to the police station. There is no evidence that either parent had reported the child missing.

---

[1] On review of the sufficiency of the evidence to support a conviction, "[a]ppellate courts in Virginia 'view the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court.'" Miller v. Commonwealth, 64 Va. App. 527, 534 n.1, 769 S.E.2d 706, 709 n.1 (2015). To do so, we give the Commonwealth "'all reasonable inferences fairly deducible' from [the evidence,] . . . discard[] 'the evidence of the accused in conflict with that of the Commonwealth, and regard[] as true all the credible evidence favorable to the Commonwealth.'" Id. at 536, 769 S.E.2d at 710 (quoting DeAmicis v. Commonwealth, 31 Va. App. 437, 440, 524 S.E.2d 151, 152 (2000) (*en banc*)).

The appellant agreed to speak with the police. During his interview, which was recorded and admitted into evidence, the appellant provided his version of events. He said that he had supervised the child while the mother had gone out with her friend earlier that night. While waiting for the mother, the appellant contacted her because she was taking longer than expected and he wanted her to return to the hotel. At about 2:00 a.m., the appellant took the child with him to the parking lot to retrieve an item he had left in the mother's car. The mother and her friend arrived back at the parking lot while the appellant was there. She became upset when she saw the appellant near her car. They argued, and the mother threatened to call the police. The appellant took his son back inside to the hotel room. The mother and her friend also returned to the room. The appellant explained that he left a few minutes later, around "two or three" in the morning, in part because the mother had threatened to call the police. He claimed that at that time, the mother was "putting [the child] down for bed," and her friend had remained in the room with them.

According to the appellant, after leaving the room, he took a taxi to his friend's house where he watched movies. While there, the appellant attempted to contact the mother numerous times by sending her messages through Facebook, including asking her, "Where you at?" He explained that he asked that question in case she had taken the child with her away from the hotel because she was mad. The appellant initially stated that the mother had given him no reason to believe that she would leave the hotel, but then said that she had talked about "possibly going" with a friend to a doctor's appointment at an unspecified time in the morning.

While alone in the police interview room, the appellant called the friend he had visited. The audio equipment in the interview room recorded the appellant's side of the conversation. He said to his friend, "The reason I was trying to hurry and get back, man. To make sure she ain't leave. And she did."

The appellant also spoke with a representative from CPS. As part of CPS' investigation, the appellant was tested for drugs. He tested positive for marijuana, oxycodone, methadone, and opiates. The appellant claimed that he was prescribed medication for a torn meniscus in his knee. Although police found a prescription bottle for oxycodone with his name on it, the appellant did not produce a prescription for the other drugs in his system. The witness from CPS testified, without objection, that the appellant stated at his arraignment hearing that he "took full responsibility for what happened."

On the charge of failure to appear, the Commonwealth admitted official court documents into evidence demonstrating that the appellant was notified to appear in court for a preliminary hearing on July 10, 2013, for a related felony charge, but failed to appear for the hearing. The appellant testified that he knew about his court date but assumed that his case had been continued because his co-defendant, the mother, had received a continuance. He conceded, however, that he did not receive notice of a continuance. The appellant argued to the trial court that the Commonwealth was required to prove that his absence was willful. The Commonwealth contended simply that the appellant admitted that "no one told him" not to come to court for the scheduled hearing.

The appellant was convicted of failure to appear and contributing to the delinquency of a minor. The court, however, granted the appellant's motion to strike the felony child neglect charge.

The trial court addressed the failure to appear charge in the following manner:

> Mr. Brown, you were charged with this serious charge of felony abuse and neglect of your son. You posted a bond. As a condition of your bond, you signed a recognizance that clearly showed that you were to reappear in court on July l0th at nine o'clock. . . .
>
> [I]f you had any question as to what your date was, whether it had changed from that or not, you could have contacted your attorney. You certainly could have contacted the court to confirm

- 4 -

if you thought your date had changed, but you didn't do any of that. You just took a calculated risk that it had changed and you didn't show up. Well, that's a willful failure to appear.

In finding the appellant and his co-defendant guilty of contributing to the delinquency of a minor, the court explained that the appellant's "actions and omissions contributed to the lack of supervision of [his] two-year old on the night . . . in question." The trial court found that both the appellant and his co-defendant "failed in [their] required duties as . . . parent[s] to see that [their] son was adequately supervised." The court also noted the family's living conditions "in a hotel that was full of strangers," in a room with "a bathtub full of water," and "drugs in the room that had been misused by both [parents] within a relatively short period of time of his being neglected." The court concluded that the parents' actions and omissions caused the situation where the child was "wandering around the hotel unsupervised" and that the circumstances "clearly show[ed] neglect."

The court sentenced the appellant to a total of three years of incarceration, with two years suspended.

II. ANALYSIS

The appellant challenges the sufficiency of the evidence to prove both offenses. He argues as to the failure to appear conviction that the trial court did not find that his failure was *willful*, as required by Code § 19.2-128(B). Regarding the conviction for contributing to the delinquency of a minor, he argues that the Commonwealth failed to prove that any *willful* act or omission on his part led to his child's lack of supervision.

In this Court's review of the sufficiency of the evidence to support a conviction, we will affirm the decision unless the trial court was plainly wrong or the conviction lacks evidence to support it. See, e.g., Williams v. Commonwealth, 57 Va. App. 750, 762, 706 S.E.2d 530, 536 (2011). If the evidence is sufficient to support the conviction, the reviewing appellate court will not

- 5 -

"substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]." Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013).

The appellant was tried by the circuit court, sitting without a jury. Consequently, that court was the fact finder and its judgment is afforded the same weight as a jury verdict. Preston v. Commonwealth, 281 Va. 52, 57, 704 S.E.2d 127, 129 (2011). It was in the position to see and hear the witnesses as they testified and to make credibility determinations. Miller v. Commonwealth, 64 Va. App. 527, 536, 769 S.E.2d 706, 710 (2015). Consequently, decisions regarding the credibility of the witnesses and the weight of the evidence are matters left solely to the fact finder below, in this case the trial court. See, e.g., Davis v. Commonwealth, 230 Va. 201, 206, 335 S.E.2d 375, 379 (1985).

When a conviction is based on circumstantial evidence, that evidence "'must exclude every reasonable hypothesis of innocence.'" Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993) (quoting Boothe v. Commonwealth, 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987)). However, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence . . . ." Id. Whether a "'hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.'" Wood v. Commonwealth, 57 Va. App. 286, 306, 701 S.E.2d 810, 819 (2010) (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004)).

We review the challenges to the sufficiency of the evidence under these well-established legal principles.

## A. *Failure to Appear*

The appellant argues that the trial court made a factual finding that his testimony was credible. He reasons that consequently the court erred by holding that his "calculated risk" that his court date "had changed" constituted a "willful failure to appear."

Code § 19.2-128(B) provides that "[a]ny person . . . charged with a felony offense . . . who willfully fails to appear before any court as required shall be guilty of a Class 6 felony." In order to support a conviction for failure to appear, the Commonwealth must prove that the defendant "'willfully' failed to appear" at trial or other court proceeding. Williams, 57 Va. App. at 762-63, 706 S.E.2d at 536. "'Willfully,' as used in Code § 19.2-128(B), has the customary meaning that the act must have been done 'purposely, intentionally, or designedly.'" Hunter v. Commonwealth, 15 Va. App. 717, 721, 427 S.E.2d 197, 200 (1993) (*en banc*). Intent may, and usually must, be proved by circumstantial evidence, and the fact finder may presume an offender intends the "natural and probable consequences" of his acts. Campbell v. Commonwealth, 12 Va. App. 476, 483-84, 405 S.E.2d 1, 4 (1991) (*en banc*). "When the government proves that an accused received timely notice of when and where to appear for trial [or other legal proceeding] and thereafter does not appear on the date or place specified, the fact finder may infer that the failure to appear was willful." Hunter, 15 Va. App. at 721, 427 S.E.2d at 200.

The appellant contends that the trial court's statement that he "took a calculated risk" demonstrates that it believed his testimony but then misapplied the "willful" element of the offense. However, when considering whether a trial court applied an incorrect legal standard, the judge's comments must be viewed in context, keeping in mind the legal requirements on appellate review. See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977) ("[W]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been

misapplied."); see also Bassett v. Commonwealth, 13 Va. App. 580, 583-84, 414 S.E.2d 419, 421 (1992) (holding that a "trial court's remark is not, in and of itself, 'the full context' simply because it represents the only point at which the court [expressly] addressed the issue [in dispute]").

The record in this case refutes the appellant's claim. After summarizing the facts that demonstrated that the appellant knowingly failed to appear in court, the trial court stated,

> [I]f you had any question as to what your date was, whether it had changed from that or not, you could have contacted your attorney. You certainly could have contacted the court to confirm if you thought your date had changed, but you didn't do any of that. You just took a calculated risk that it had changed and you didn't show up. Well, that's a willful failure to appear.

The first two sentences of the judge's comments make clear the contingent nature of his observation, stating that "*if*" the appellant thought that his hearing date had changed, he "*could*" have contacted his attorney or the court. This conditional language signals that the judge doubted the appellant's claim of an innocent mistake. If the appellant, who was a convicted felon, had truly thought his court date had changed, he could have contacted his attorney or the court, but he did not. The court concluded by opining, "[T]hat's a *willful* failure to appear." (Emphasis added). The judge's comment that the appellant "took a calculated risk," viewed in context, was not inconsistent with the finding that the appellant's actions were willful. In addition, consistent with the trial court's ruling, the appellant's counsel argued to the trial court that willfulness was a required element of the offense. A full reading of the record supports the conclusion that the trial court knew and correctly applied the law.

The judge rejected the appellant's "hypothesis of innocence," and the record supports that decision. It contains the bond agreement signed by the appellant promising to appear for his July 10, 2013 hearing. The appellant's signature affirmed that he understood that "failure to appear [was] a separate crime" from the underlying charged offense. Further, the appellant admitted at

- 8 -

trial that no one told him not to go to court on that date. This evidence refutes any claim of mistake. The trial court was not required to accept the appellant's explanation as credible, and it was entitled to "accept the parts" of his testimony that it found "believable and reject other parts as implausible." Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (*en banc*).

The evidence that the appellant knew his hearing date and did not appear in court on that date supports the trial court's conclusion that his failure to appear was willful. Therefore, we affirm the conviction for failure to appear.

### B. Contributing to the Delinquency of a Minor

The only challenge to the sufficiency of the evidence is that the Commonwealth did not prove the "willful" element of the offense of contributing to the delinquency of a minor. He relies on the fact that he left the child with his co-defendant, the child's mother. The appellant suggests that there was no evidence that the child's neglect arose from his actions.

Code § 18.2-371 provides, in pertinent part: "Any person . . . , including the parent of any child, who (i) *willfully* contributes to, encourages, or causes any act, omission, or condition that renders a child . . . abused or *neglected* as defined in § 16.1-228 . . . is guilty of a Class 1 misdemeanor." (Emphases added).[2] The trial court made the factual finding that the appellant's actions constituted neglect.

Code § 16.1-228 defines an abused or neglected child, in pertinent part, as a child "[w]hose parent[] . . . creates a substantial risk of death, disfigurement or impairment of bodily or mental functions" or "[w]ho is without parental care or guardianship caused by the

---

[2] In contrast, it is a felony offense for a parent to "by willful act or omission . . . permit[] serious injury to the life or health" of a child, or for a parent's "willful act or omission in the care of [a] child" to be "so gross, wanton, and culpable as to show a reckless disregard for human life." Code § 18.2-371.1.

unreasonable absence . . . of the child's parent." "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in futuro* . . . ." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1183, 409 S.E.2d 16, 19 (1991).

The record supports the trial court's conclusion that the appellant willfully contributed to the neglect of his child, either through contributing to the situation that had "a substantial risk of death, disfigurement or impairment of bodily or mental functions" or though his "unreasonable absence," contributing to the child's lack of "parental care or guardianship." His unchallenged statement that he took "full responsibility for what happened" supports the conclusion that he willfully contributed to the child's neglect. The police recording of the thirty-one-year-old appellant further supports the inference that he left the hotel room having reason to believe that the mother would not stay to supervise their young child. He admitted that the situation was volatile with the mother when he left. The appellant's statements as to the mother's whereabouts were inconsistent. At first he told the officer that she had given him no indication that she would go anywhere, but later in the interview stated that she had discussed "possibly" going with a friend to a doctor's appointment. Additionally, his recorded statement to his friend that he was in a hurry to return "to make sure she [didn't] leave" suggested that he had reason to believe that the mother would leave. The appellant's attempt to contact the mother while at his friend's house and ask her where she was at the time further suggests that he knew or believed that she had left the hotel.

Although the appellant points to his statement to the police that he left the child in the mother's care and had no reason to think that she would leave, the trial court made an implicit factual finding rejecting this defense. See Wood, 57 Va. App. at 306-07, 701 S.E.2d at 820 (holding that the "trial court was not required to accept the story" that the defendant told the

police). See generally Cuffee v. Commonwealth, 61 Va. App. 353, 367, 735 S.E.2d 693, 700 (2013) (affirming the trial court's implicit factual finding). That finding was supported by the appellant's own statements and admissions to law enforcement, to his friend, and in open court.

Under the unique circumstances of this case, the trial court was not plainly wrong and the evidence supports the conclusion that the appellant's willful acts contributed to the neglect of his child. Consequently, we affirm the conviction for contributing to the delinquency of a minor.

In light of this holding, we do not address the Commonwealth's alternative argument that the child was in need of services because the child was living in a hotel "full of strangers" and in a room "in close proximity to a bathtub with water and drugs." See Jones v. Commonwealth, 272 Va. 692, 701-02, 636 S.E.2d 403, 408 (2006) (affirming conviction under Code § 18.2-371.1(B)(1) where "unattended child" was exposed to substantial or probable risk of harm from "harmful drugs within arm's reach").

## III. CONCLUSION

The evidence, viewed under the appropriate standard of review, supports the finding that the appellant willfully failed to appear. In addition, the record supports the trial court's finding that the appellant willfully contributed to the neglect of his two-year-old child. For these reasons, we affirm the convictions.

Affirmed.