COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Humphreys, Petty and Decker
Argued at Richmond, Virginia


TIFFANY STEVENS MILLER

                                                           OPINION BY
v.        Record No. 0340-14-4              JUDGE MARLA GRAFF DECKER
                                                          MARCH 31, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

Bryan T. Kennedy, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Tiffany Stevens Miller appeals her conviction for contributing to the delinquency of a

minor, in violation of Code § 18.2-371. Specifically, she suggests that the evidence was insufficient

to support her conviction because the Commonwealth failed to prove: (1) she left her child without

parental care or guardianship, (2) her actions constituted an unreasonable absence from the child,

and (3) her actions were willful. Miller also argues that the trial court erred when it denied her

proposed jury instruction defining parental care for purposes of the statute. The Court holds that the

evidence was sufficient to support the conviction and that the trial court did not err by denying the

proposed jury instruction. Consequently, we affirm the judgment of the trial court.

I.  BACKGROUND[1]

On May 1, 2013, the appellant went to a grocery store in Fairfax County.  She had her young child and two dogs with her in her vehicle.  The child, who appeared to be between one and two years old, was in a car seat in the back seat.  The appellant "double parked" the car in the fire lane in front of the store.  The cement was clearly marked with yellow paint to indicate that no parking was allowed in that location.  The appellant left the car's engine running and went inside the store while the child remained asleep in the car seat.  All of the car's windows were open, including the one closest to the child.

Once inside the store, at some point in time, the appellant approached employee Raul Campaverde, whom the appellant did not know.  She asked Campaverde if he could "watch her car outside for about five minutes."  She pointed to her car but Campaverde could not see it.  He went outside to the car and saw a child asleep in the back seat.  The appellant had not told him that a child was inside the car.  Campaverde stayed with the car for "longer than 30 minutes" but had to return to the store to resume his duties.  Before doing so, he found Lisa Slawson, a co-worker who had just begun an hour-long assignment in the parking lot.  Slawson agreed to "watch the child as much as she could" but clarified with Campaverde that she "could not stand there and do nothing; she had to move carts and go inside frequently."  Slawson, like Campaverde, did not know the appellant.

After about five to ten minutes of watching the car, Slawson saw the appellant exit the store.  The appellant went to the car, took what appeared to be the car keys, told Slawson she would be back in a few more minutes, and went back inside.  According to Slawson, the appellant did not "tend to the child" or say anything else to her.  After about twenty to thirty minutes, Slawson went

---

[1] Appellate courts in Virginia "view the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court."  Preston v. Commonwealth, 281 Va. 52, 57, 704 S.E.2d 127, 129 (2011).  On appeal to this Court, the evidence is contained in an agreed statement of facts.

into the store to attend to her assigned responsibilities. She was not aware of anyone else watching the vehicle. Slawson told her managers about the situation and explained that she was conflicted between watching the car and doing her job.

Larry Baxley, a store manager, also saw the appellant's car parked in the fire lane with the unattended child inside. Baxley spoke with Campaverde, who "told him about the car." Baxley "looked [at] the car on several occasions after going into the store" but never saw anyone with the vehicle or watching it. He wrote down the license plate number and, after about twenty minutes of observing the unattended car, notified the police.

Campaverde estimated that the car was gone between forty-five minutes to an hour after he first encountered the appellant. Slawson noticed that the vehicle was parked in front of the store just before her hour-long assignment began and was still there when the assignment ended.

When Officer Kannegisser of the Fairfax County Police Department arrived at the store, the car was gone. He went to the appellant's home to investigate. She admitted that the unattended car belonged to her and that her child was inside the vehicle while it was parked in front of the store. She told the officer that she left the engine running and "employees of the store had agreed to watch the child for her." However, she did not know the names of the employees.

The jury convicted the appellant of contributing to the delinquency of a minor, in violation of Code § 18.2-371. Consistent with the recommendation of the jury, the trial court imposed a fine of $800.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

The appellant contends that the trial court erred by finding the evidence sufficient to convict her of contributing to the delinquency of a minor. She asserts three alleged deficiencies, arguing that the Commonwealth failed to prove that: (1) she left her child without parental care or

guardianship, (2) her actions constituted an unreasonable absence from her child, and (3) her actions were willful.

This Court applies a well-established standard when reviewing the sufficiency of the evidence to support a criminal conviction. "[W]e consider the record 'in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible'" from that record. DeAmicis v. Commonwealth, 31 Va. App. 437, 440, 524 S.E.2d 151, 152 (2000) (*en banc*) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)) (internal quotation marks omitted). In doing so, the Court discards "'the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth.'" Id. (quoting Watkins, 26 Va. App. at 348, 494 S.E.2d at 866). The judgment of the jury, confirmed by the trial court, "finding guilt beyond a reasonable doubt, will not be set aside unless plainly wrong or unsupported by the evidence." Id.; see Code § 8.01-680.

The law is also clear that determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify. Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998). Finally, if the evidence is sufficient to support the conviction, the reviewing appellate court will not "substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]." Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013).

The code section prohibiting the offense of contributing to the delinquency of a minor provides, in pertinent part, that any person, including the parent of the child, who "willfully contributes to, encourages, or causes any act, omission, or condition that renders [the] child . . . abused or neglected as defined in § 16.1-228 . . . is guilty of a Class 1 misdemeanor." Code § 18.2-371(i). Here, the Commonwealth proceeded under the theory that the abuse or neglect fell

within the definition provided in Code § 16.1-228(5). Based on that definition, an abused or neglected child, for purposes of this case, is any child "[w]ho is without parental care or guardianship caused by the unreasonable absence . . . of the child's parent, guardian, legal custodian, or other person standing in loco parentis." Code § 16.1-228(5).

To the extent our analysis of the sufficiency of the evidence requires us to examine the statutory language, we review issues of statutory construction *de novo* on appeal. See, e.g., Sarafin v. Commonwealth, 288 Va. ___, ___, 764 S.E.2d 71, 74 (2014). This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute. See Blake v. Commonwealth, 288 Va. ___, ___, 764 S.E.2d 105, 107 (2014).

We apply these well-established legal principles to our review of this case.

### 1. Parental Care or Guardianship

The appellant argues that the Commonwealth failed to prove that she left her child "without parental care or guardianship." We hold that the evidence was sufficient to support the jury's finding regarding this element of the offense.

Code §§ 18.2-371 and 16.1-228, the applicable sections, do not define parental care or guardianship. Consequently, consistent with the law relating to interpretation of statutes, plain, ordinary words are to be given their common, everyday meaning. See, e.g., Thomas v. Commonwealth, 59 Va. App. 496, 500, 720 S.E.2d 157, 159-60 (2012). There can be no dispute that the mother left her toddler for about an hour. Parental care, a term used in the statute, is quite simply the care provided by a parent to his or her child. When the appellant chose to go inside the store and leave her young child in the car, either alone or under the intermittent monitoring of a stranger, she left him without parental care. See Wood v. Commonwealth, 57 Va. App. 286, 300-01, 701 S.E.2d 810, 817 (2010) (recognizing that the level of care needed depends upon the

- 5 -

degree of vulnerability of the child and that "mature judgment" is "necessary for parents of small children").

The record also supports a finding that the appellant left her child without a guardian. The term guardian, given its common meaning, implies some degree of legal or formal responsibility for a child. See In re O'Neil, 18 Va. App. 674, 678-79, 446 S.E.2d 475, 478 (1994) ("A guardian is 'one who legally has responsibility for the care and management of the person, or the estate, or both, of a child during its minority.'" (quoting Black's Law Dictionary 635 (5th ed. 1979))); Black's Law Dictionary 822 (10th ed. 2014) (defining "guardian" as "[s]omeone who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability"). The record is devoid of any evidence of such an individual attending to the child's care in the appellant's absence. Instead, here, at best, a stranger who agreed to watch her car, not her child, and then a second stranger, whom she knew nothing about until she saw that person already watching the car, remained with the vehicle intermittently during the appellant's hour-long absence. The jury did not err in refusing to consider these store employees, unwittingly pressed into service, as "guardians" of the child for purposes of the definition of an abused or neglected child. Their mere periodic presence near the car simply did not relieve the appellant of her responsibility to provide an appropriate type and level of care for her young son.

To the extent that the appellant contends that the holdings in Snow v. Commonwealth, 33 Va. App. 766, 537 S.E.2d 6 (2000), and Krampen v. Commonwealth, 29 Va. App. 163, 510 S.E.2d 276 (1999), are instructive in interpreting the meaning of "parental care or guardianship" under Code § 16.1-228(5), we conclude that those cases are distinguishable. Each opinion involved determining the meaning of a particular phrase in a different statutory offense. Snow, 33 Va. App. at 771-73, 537 S.E.2d at 9-10 (considering who qualifies as a "person responsible for the care of a child" in the context of who may be punished for the felony of child abuse or

neglect under Code § 18.2-371.1); Krampen, 29 Va. App. at 166-69, 510 S.E.2d at 277-79

(considering what constitutes a "custodial or supervisory relationship" in the context of who may

be punished for the felony of taking indecent liberties with a child under Code § 18.2-370.1).

The Court concluded that the specific language in those statutes does not limit criminal liability

to those situations in which legal custody exists. Snow, 33 Va. App. at 773, 537 S.E.2d at 10;

Krampen, 29 Va. App. at 168, 510 S.E.2d at 278. Thus, in Snow and Krampen, the statutory

language at issue enlarged the category of criminal defendants subject to punishment for the

felonies proscribed by Code §§ 18.2-370.1 and -371.1. These phrases do not apply to narrow the

scope of criminal responsibility under the different statute at issue here, Code § 18.2-371(i).

That statute defines the misdemeanor offense of contributing to the delinquency of a minor,

which incorporates the definition of abuse or neglect in Code § 16.1-228 and does not contain

the elements at issue in Snow and Krampen.[2]

The appellant also suggests that when one leaves a child for a short period of time and the

child remains uninjured and does not demonstrate any unmet needs, this behavior does not amount

to leaving the child without parental care. Code § 18.2-371(i) provides, however, that a parent who

willfully and through an unreasonable absence causes the child to be without parental care or

---

[2] In support of her argument that her son was not without parental care or guardianship, the appellant also relies on a series of civil decisions. See Ridgley v. Fairfax Cnty. Dep't of Fam. Servs., No. 2560-09-4 (Va. Ct. App. Nov. 30, 2010); Datta v. Fairfax Cnty. Dep't of Fam. Servs., No. 0293-06-4 (Va. Ct. App. Aug. 22, 2006); Lewis v. Fredericksburg Dep't of Soc. Servs., No. 2832-02-2 (Va. Ct. App. Aug. 12, 2003). We reject her claim that these decisions are instructive. First, they are unpublished and, therefore, are not binding precedent. See Otey v. Commonwealth, 61 Va. App. 346, 350 n.3, 735 S.E.2d 255, 257 n.3 (2012). Second, they are unpersuasive because the facts and legal analyses differ significantly from those in the appellant's case. Datta was decided under the "mental or physical incapacity" prong of Code § 16.1-228(5) rather than the "unreasonable absence" prong. Lewis held merely that an indeterminate incarceration constituted an unreasonable absence under the statute; it did not purport to establish the floor of behavior that constitutes an unreasonable absence. Finally, Ridgley, which also involved a parental absence due to incarceration, addressed a termination of parental rights rather than a finding of abuse or neglect under the definition in Code § 16.1-228(5).

- 7 -

guardianship violates the statute. Compare Code § 18.2-371(i) (Class 1 misdemeanor not requiring actual harm or impairment), with Code § 18.2-371.1(A) (Class 4 felony requiring proof of "serious injury to the life or health of [the] child" and containing a non-exclusive list of injuries covered). The statute does not require actual harm or impairment.[3] Thus, the evidence supports the jury's finding that the appellant left her child without "parental care or guardianship."

## 2. Unreasonable Absence

The appellant further suggests that the Commonwealth failed to prove that her absence was "unreasonable" for purposes of showing abuse or neglect. We hold that the evidence was sufficient to support the jury's finding that the Commonwealth met its burden of proof as to this element.

Neither the statute nor case law defines what constitutes "unreasonable absence" for purposes of determining abuse or neglect under Code § 16.1-228(5). However, "'[w]hen the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.'" Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003). Simply put, "[w]e must . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute." Barr v. Town & Country Props., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990). "An undefined term must be 'given its ordinary meaning, given the context in which it is used.'" Sansom v. Bd. of Supers., 257 Va. 589, 594-95,

---

[3] "[T]he absence of any injury requirement and the authorization of a less severe punishment[] 'demonstrates a legislative intent to prohibit conduct that . . . has the *potential* for endangering a child's life.'" See Jones v. Commonwealth, 46 Va. App. 713, 718, 621 S.E.2d 676, 679 (2005) (applying these principles to the different grades of felony offenses proscribed by Code § 18.2-371.1(A) and (B)(1)) (quoting Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 214 (2004)), aff'd, 272 Va. 692, 636 S.E.2d 403 (2006). In any event, the jury was instructed, without objection, that the Commonwealth was not required to prove actual harm or impairment to the child in order to establish abuse or neglect. Thus, this instruction became the law of the case. See Ludwig v. Commonwealth, 52 Va. App. 1, 12, 660 S.E.2d 679, 684 (2008).

514 S.E.2d 345, 349 (1999) (quoting Dep't of Tax'n v. Orange-Madison Coop. Farm Serv., 220 Va. 655, 658, 261 S.E.2d 532, 533-34 (1980)).

The word "reasonable," in ordinary usage, "means 'fair; just; ordinary or usual; not immoderate . . . ; not capricious or arbitrary.'" Sydnor Pump & Well Co. v. Taylor, 201 Va. 311, 317-18, 110 S.E.2d 525, 530 (1959) (citation omitted). Whether the appellant's absence was "unreasonable" was a question of fact for the jury. Cf. Commonwealth v. Duncan, 267 Va. 377, 386, 593 S.E.2d 210, 215 (2004) ("[T]he dangers inherent in [giving alcohol to a six-month-old baby] could be inferred by the fact finder as a matter of common knowledge."); Canipe v. Commonwealth, 25 Va. App. 629, 643, 491 S.E.2d 747, 753 (1997) (holding that whether a killing was done in the heat of passion upon *reasonable* provocation is a question of fact). Here, the jury determined that the facts of this case supported the conclusion that the appellant's undisputed absence from her child for approximately one hour under the specific conditions of the case was unreasonable. That conclusion is not plainly wrong or without evidence to support it.

The appellant left her young child in a car with its engine running and the windows open. She double parked the vehicle in a fire lane where parking was clearly marked as prohibited. She went inside the store, leaving the child unattended. At some point she asked an employee, a complete stranger to her, if he would "watch her car outside for about five minutes." Despite the appellant's representation to that employee that she would be gone for only five minutes, thirty minutes later, the employee needed to return to his post in the store so, on his own volition, he asked another employee, also a stranger to the appellant, to watch the car. She agreed to do so only on a limited basis. After another five to ten minutes, the appellant came outside and removed the keys from the car. Despite the fact that she did not know this second employee who was near her car and child, and had not enlisted her to watch the child, the appellant simply told the employee that she

- 9 -

would be back in a few minutes and went back inside the store. After about another twenty to thirty minutes, the second employee went back inside the store, leaving the child and car unattended.

In total, the appellant left her child for about an hour while she was inside the grocery store. No evidence indicated any sort of emergency that might have rendered her absence reasonable. Rather, the appellant left the child merely so that she could shop or conduct other business in a store for a significant period of time. The child could easily have been kidnapped or taken inadvertently in a theft of the car, hurt in a collision with another car while double parked in the fire lane, or injured by the dogs in the car. Further, the fact that strangers watched the vehicle during that period of time could actually have added to the potential danger since the appellant knew nothing about the two individuals beyond their status as employees of the grocery store.

These facts provided the jury with ample evidence to conclude that the appellant left her child either with a stranger or unattended for an hour and that the situation constituted an "unreasonable absence" from her young son.

### 3. Willfulness

The appellant argues that the Commonwealth failed to prove that her actions were willful. We hold that the evidence, viewed under the proper standard, was sufficient to prove this element.

Pursuant to Code § 18.2-371(i), the Commonwealth was required to prove that the appellant willfully contributed to or caused an act, omission, or condition that rendered her son abused or neglected as defined in Code § 16.1-228(5). The jury was specifically instructed, without objection, that a willful act is:

> one done with a bad purpose, or without justifiable excuse, or without ground for believing it is lawful. A willful act is intentional, or knowing, or voluntary, as distinguished from accidental. The terms "bad purpose" or "without justifiable excuse" require knowledge that the particular conduct will likely result in injury or illegality.

See Va. Model Jury Instr. – Criminal, No. 29.360 (2012).[4]  Willfulness in this context "means the same thing as 'criminal negligence' or recklessness."  Ronald J. Bacigal, Criminal Offenses and Defenses 296 (Va. Practice Series, 2014) (addressing Virginia's felony abuse and neglect statutes); see Carosi v. Commonwealth, 280 Va. 545, 556, 701 S.E.2d 441, 447 (2010).  In determining whether conduct constitutes criminal negligence, the Court applies an objective standard, and the test is whether the appellant "'knew or should have known the probable results of [her] acts.'"  Jones v. Commonwealth, 272 Va. 692, 701, 636 S.E.2d 403, 408 (2006) (quoting Kelly v. Commonwealth, 42 Va. App. 347, 356, 592 S.E.2d 353, 357 (2004)).  The analysis regarding whether an act is willful is fact specific.  Carosi, 280 Va. at 556, 701 S.E.2d at 447.  Relevant facts include "the gravity and character of the possible risks of harm; the degree of accessibility of the parent; the length of time of the abandonment; the age and maturity of the child[]; [and] the protective measures, if any, taken by the parent."  Barnes v. Commonwealth, 47 Va. App. 105, 113, 622 S.E.2d 278, 282 (2005).

Here, the jury was presented with ample evidence to support its conclusion that the appellant acted willfully in a criminally negligent manner.  She left her young child asleep in her car, double parked in a clearly marked fire lane, with the windows open, the engine running, and two dogs inside.  She left the child alone while she went inside and found a store employee, who was a complete stranger.  She asked him to watch her car, not her child.  She also told the employee that she would return in five minutes, but instead, she was gone for about an hour.  After more than

---

[4] This instruction became the law of the case.  The commentary accompanying the model jury instruction defining willfulness states that it applies to prosecutions under Code § 18.2-371.1, which covers felony child abuse or neglect.  See Va. Model Jury Instr. – Criminal, No. 29.360 cmt.  Because this instruction has become the law of the case, we use the various decisions analyzing willfulness in the context of Code § 18.2-371.1 and the related felony in Code § 40.1-103 in resolving the appellant's challenge to this element of the misdemeanor proscribed by Code § 18.2-371.  Nevertheless, these cases are not controlling in all respects because of the differences in other elements in the various statutes.

thirty minutes had passed and the first employee had pressed a co-worker into intermittent service so that he could return to work, the appellant came outside to retrieve her keys. Seeing a new stranger near the car, she merely grabbed her keys, yet again left her child in the car, and simply told the stranger that she would return in a few minutes. Again, she failed to do so, and some twenty to thirty minutes later, the second employee left the car unattended.

This evidence demonstrates that the appellant knowingly and intentionally left her child for an extended period of time in a vehicle, either alone or with a stranger, in such a manner to support the conclusion that it was done with "a bad purpose, or without justifiable excuse, or without ground for believing it [was] lawful." Under the facts of this case, it was reasonable for the jury to conclude that the appellant knew or should have known that her intentional actions in leaving her young son in the car rather than taking him with her into the grocery store subjected him to a substantial risk of harm. See, e.g., Wood, 57 Va. App. at 300, 701 S.E.2d at 816 (identifying "moving vehicles and strangers" as dangers to children in parking lots); Kelly, 42 Va. App. at 356, 592 S.E.2d at 357-58 (characterizing a young child left in a child seat in a vehicle as "helpless"). Any number of dangers are associated with leaving a child unattended with two dogs, or periodically with complete strangers, in a running vehicle parked in a fire lane in front of a grocery store for an hour. The potential hazards to an unattended toddler under these circumstances span the range of the imagination of the average person. The child could have sustained injury at the hands of a child predator or car thief, injury caused by a vehicle striking the car double parked in the fire lane, or injury caused by the dogs. The jury's conclusion that the appellant acted willfully is not plainly wrong or without evidence to support it.

The appellant relies on the decision in Ellis v. Commonwealth, 29 Va. App. 548, 513 S.E.2d 453 (1999), in support of her claim that her actions were not willful. The facts in Ellis, however, are readily distinguishable. In Ellis, the defendant's apartment caught fire after she accidentally left the

stove on and went to a neighbor's porch nearby while her young daughters napped in the apartment. Id. at 551-53, 513 S.E.2d at 455-56. The defendant was charged with violating Code § 18.2-371.1(A), a Class 4 felony, which requires proof of both a "'willful act or omission'" and a nexus showing that the act or omission "'cause[d] or permit[ted] serious injury to the life or health of [a] child.'" Id. at 553-55 & n.1, 513 S.E.2d at 456-57 & n.1 (quoting Code § 18.2-371.1(A)). The parties stipulated that one of the defendant's children suffered the required serious injury from smoke inhalation. Id. at 552, 513 S.E.2d at 455. The Court held that the defendant was guilty of ordinary negligence because she left her apartment during her children's nap time and accidentally failed to turn off the stove when she did so. Id. at 555-56, 513 S.E.2d at 457. It further concluded that her behavior did not violate the felony statute at issue because it was her accidental act of forgetting to turn off the stove, rather than her intentional act of leaving the apartment, that caused or permitted the injury. Id. at 555, 513 S.E.2d at 457. It reasoned that the evidence failed to establish that she left the apartment "with knowledge or consciousness" that the harm that actually occurred was likely to befall her child. Id.; see Noakes v. Commonwealth, 54 Va. App. 577, 590, 681 S.E.2d 48, 54 (2009) (*en banc*) (characterizing Ellis as holding that the "defendant was not criminally negligent because she was unaware she had left a kitchen burner on and, accordingly, did not consciously disregard the likely ignition of a grease fire that would ultimately endanger the lives of her children"), aff'd, 280 Va. 338, 699 S.E.2d 284 (2010).

In the appellant's case, by contrast, she was convicted of misdemeanor contributing to the delinquency of a minor by abuse or neglect under Code § 18.2-371. This offense does not require proof that the foreseeable risk resulted in actual harm to the child. This lesser crime, in relevant part, is complete upon proof that the appellant "knew or should have known" that her intentional conduct involving her child created "a substantial risk" of injury. The evidence here met this standard. See, e.g., Jones, 272 Va. at 701, 636 S.E.2d at 408 (upholding a conviction under Code

- 13 -

§ 18.2-371.1(B)(1) where the defendant knew or should have known that allowing her eight-year-old son to be in the same room with heroin capsules and cocaine residue created a substantial risk of serious injury); Barnes, 47 Va. App. at 111-13, 622 S.E.2d at 281-82 (upholding a conviction under Code § 40.1-103(A) where the defendant left her young children alone in an unlocked apartment while she drove to a grocery store); cf. Bean-Brewer v. Commonwealth, 49 Va. App. 3, 4, 12-17, 635 S.E.2d 680, 681, 685-87 (2006) (upholding a finding of a criminally negligent "'willful act or omission'" where a licensed in-home childcare provider allowed an eight year old to provide "extended" supervision for younger children, resulting in injury to an infant).

Clearly, under the facts of this case, in contrast to Ellis, the appellant knew or should have known that her intentional actions created a substantial risk of harm to her young son. These facts were sufficient to prove the willfulness required to support her conviction.

### B. Refused Jury Instruction

The appellant contends that the trial court erred in refusing a proffered jury instruction. The refused instruction states: "One may become a person responsible for the care of a child by a voluntary course of conduct and without explicit parental delegation of supervisor[y] responsibility or court order." We hold that the court's refusal of the instruction was not error.

It is well established that the decision to grant or deny proffered jury instructions is within the broad discretion afforded the trial court. Sarafin, 288 Va. at ___, 764 S.E.2d at 74. "'The purpose of any jury instruction is to inform the jury of the law guiding their deliberations and verdict.'" Morgan v. Commonwealth, 50 Va. App. 120, 132, 646 S.E.2d 899, 905 (2007) (quoting Keen v. Commonwealth, 24 Va. App. 795, 807, 485 S.E.2d 659, 665 (1997)). The burden is on the proponent of the instruction "to satisfy the trial court that the proposed language is a correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate language." Shaikh v. Johnson, 276 Va. 537, 546, 666 S.E.2d 325, 329 (2008).

On appeal, this Court's "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  When considering whether a trial court abused its discretion by denying a defendant's proffered instruction, this Court "view[s] the facts relevant to the determination of that issue in the light most favorable to [the defendant]." Commonwealth v. Cary, 271 Va. 87, 90-91, 623 S.E.2d 906, 907 (2006).  "[A] criminal defendant is entitled to have the jury instructed on his or her theory of defense when the evidence in the record supports the defense and when the defendant has proffered an instruction that correctly states the law." Tart v. Commonwealth, 52 Va. App. 272, 278, 663 S.E.2d 113, 116 (2008).

Here, the text of the refused instruction came from language in Snow, 33 Va. App. at 773, 537 S.E.2d at 10.  The defendant in that case was charged with felony child abuse or neglect under a different statute, which applies to "'[a]ny parent, guardian, or other person responsible for the care of a child.'" Id. at 771, 537 S.E.2d at 9 (quoting Code § 18.2-371.1(B)).  In the context of who may be a criminal actor under that statute, the Court addressed the meaning of the phrase "other person responsible for the care of a child." Id. at 773, 537 S.E.2d at 10.  It held that one may become such a person "by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility or court order." Id.

The appellant suggests that the language from Snow supports her theory that she did not leave her son without "parental care or guardianship" because the store employees who agreed to watch him while he remained in the car became "other person[s] responsible" for his care.  We reject this suggestion for two reasons.  First, the phrase "other person responsible" does not appear in the language of Code § 18.2-371, the misdemeanor offense for which the appellant was

convicted, or in the definition of abuse or neglect that statute incorporates from Code § 16.1-228(5). The proposed jury instruction does not define parental care or guardianship, the terms that do appear in the applicable statute. Second, even as employed in Code § 18.2-371.1, the purpose of the phrase "other person responsible" is to cover a broader range of defendants who may be held criminally liable, not to relieve others from criminal responsibility for their own acts of abuse or neglect. Cf. Shaikh, 276 Va. at 546, 666 S.E.2d at 329 (cautioning against indiscriminately using language from an appellate opinion in jury instructions); Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986) (noting that jury instructions should inform the jury regarding the law of the case that is applicable to the specific facts).

The offense in the instant case required the Commonwealth to prove that the appellant willfully contributed to, encouraged, or caused an act, omission, or condition that rendered the child abused or neglected. See Code § 18.2-371(i). In this case, abuse or neglect meant that the child was "without parental care or guardianship caused by the unreasonable absence . . . of the child's parent." See Code § 16.1-228(5). The jury was properly instructed on the elements of the offense and all necessary definitions. The appellant's counsel was free to argue to the jury the significance of the presence of the two employees at the car for periods of time during her hour-long absence. Consequently, the trial court did not abuse its discretion when it refused to give the proposed instruction on the definition of a "person responsible for the care of a child," a phrase that does not appear in the statutes applicable to the charged offense.

### III. CONCLUSION

We hold that the evidence was sufficient to prove that the appellant contributed to the delinquency of a minor, in violation of Code § 18.2-371. Further, we hold that the trial court did not err in rejecting the appellant's proposed jury instruction. Consequently, we affirm the conviction.

Affirmed.