COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges AtLee and Malveaux
Argued at Richmond, Virginia


ASHLEY MICHELLE UNGER

v.          Record No. 0003-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
JANUARY 10, 2023

FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Elliott B. Bender (David C. Reinhardt; Bender Law Group, PLLC;
Reinhardt Law Firm, PLLC, on briefs), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial, the circuit court convicted appellant Ashley Michelle Unger of

contributing to the delinquency of a minor, in violation of Code § 18.2-371.  On appeal, she argues

that: (1) the circuit court did not have jurisdiction over this matter pursuant to Code § 16.1-241,

(2) the evidence was insufficient to prove a violation of Code § 18.2-371, and (3) the circuit

court erred in admitting the "irrelevant and speculative" testimony of Department of Social

Services ("DSS") worker Shannon Hill regarding closed investigations and "as to whether the

behavior at issue would have been a violation of a child protective services safety plan."[1]  For the

following reasons, we reverse.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Because we find that the evidence, with or without Hill's testimony, was insufficient to
show Unger "willfully contribute[d] to, encourage[d], or cause[d] any act, omission, or
condition" that left T.W. "delinquent, in need of services, in need of supervision, or abused or
neglected," Code § 18.2-371, we need not address the alleged errors in admitting Hill's
testimony.

## I. BACKGROUND

"On appeal of criminal convictions, we view the facts in the light most favorable to the Commonwealth, and [we] draw all reasonable inferences from those facts." *Johnson v. Commonwealth*, 73 Va. App. 393, 396 (2021) (alteration in original) (quoting *Payne v. Commonwealth*, 65 Va. App. 194, 198 (2015)). So viewed, the facts reflect the following.

Unger has a minor son, T.W., who was four years old at the time of the incident. T.W. is on the autism spectrum. They live in a suburban neighborhood. One morning, Unger's neighbor, Amber Martin, woke up to her dog barking at 7:00 a.m. Martin saw T.W. on her back porch shortly thereafter. She took a picture of him through the glass door and sent it to her mother-in-law at 7:06 a.m. She asked T.W. what he was doing, and he said he was playing. Martin took T.W. back next door to his and Unger's house. She asked him to go back inside using the door he had left from; T.W. went in through the "side porch," and Martin followed. Martin did not see Unger downstairs and did not feel comfortable going upstairs to find her. She told T.W. to go "find mommy" but that she would wait outside for him if he could not find her or needed something. T.W. came back outside in "less than three minutes" and said Unger was sleeping. Martin and T.W. went back to her house so she could get her phone. She and T.W. went back to Unger's. Martin knocked on the door "fairly loud[ly]," and waited outside with T.W. and her dog. Unger answered the door around three minutes later. Martin said Unger appeared "mad" at her when she came to the door. Martin estimated that from when she found T.W. to when he was returned to Unger was "at least" 20 minutes. Later that afternoon or evening, "[a]fter [Unger] yelled at [her] for returning her son," Martin called the police.

Shannon Hill of the Hanover County DSS testified for the Commonwealth. Over defense objection, she testified that she had a previous case involving T.W. that was "no longer pending." Again over defense objection, Hill testified that a safety plan had been put into place for T.W. to

address his "leaving the home unauthorized." As part of the plan, Unger had since put multiple locks on the doors and installed an alarm system. She also built a six-foot-tall fence around the property. Nevertheless, because "[t]he plan required th[at] mom would . . . ensure safety at all times," and Unger acknowledged that she may have left a deadbolt unsecured, Hill opined that Unger had failed to follow the safety plan.

Unger testified in her own defense. She said that on the day of the incident, she "got up at about seven o'clock." She said that she was with T.W., helping them both get ready for an 8:00 a.m. speech therapy appointment. She left him in the bathroom and went back upstairs to get clothes for them and to pack T.W.'s school bag and assorted things for a visit to his grandparents. When she heard Martin knock on the door, she said she was in the "middle of getting ready." She believed that T.W. had been in the bathroom and had not realized he had left the house, nor did she know how he had gotten out.[2]

Prior to trial, Unger filed a motion to quash or dismiss indictment, arguing that, because this is a misdemeanor case with a minor victim, it could not be brought by direct indictment to the circuit court because Code § 16.1-241 vests "exclusive original jurisdiction" in juvenile and domestic relations district ("J&DR") courts over matters involving "[a]ny parent . . . of a child . . . [w]ho has been abused or neglected." Code § 16.1-241(F).[3] The circuit court heard argument

---

[2] The defense also called Sergeant Tim Sutton of the Hanover County Sheriff's Department, who also runs a "consulting business teaching Alzheimer's and autism as it pertains to law enforcement or public safety." He testified as an expert "in how to deal with certain intellectual disabilities, including autism" and "coping mechanisms." He spoke about children with autism and their "propensity to wander off." Unger's mother, a retired elementary school teacher, also testified about her experiences with T.W., as well as her and Unger's efforts to install safety measures to deal with T.W. getting out of the house.

[3] This "exclusive original jurisdiction" also applies in "prosecution and punishment of persons charged with ill-treatment, abuse, abandonment or neglect of children or with any violation of law that causes or tends to cause a child to come within the purview of this law, or with any other offense against the person of a child." Code § 16.1-241(I).

and denied the motion. Following a bench trial, the circuit court convicted Unger and sentenced her to 30 days in jail, with all 30 days suspended. This appeal follows.

## II. ANALYSIS

Because Unger's jurisdictional challenge is fundamental to the circuit court's power to preside over this matter, and thus our jurisdiction on appeal, we address that argument first before turning to the sufficiency of the evidence.

### A. *Standards of Review*

To the extent our analysis of either the jurisdictional challenge or the sufficiency of the evidence requires us to examine the statutory language, "we review issues of statutory construction *de novo* on appeal." *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015). "When ruling upon the sufficiency of the evidence, we grant the judgment of a trial court sitting without a jury the same weight as a jury verdict and will not disturb that judgment on appeal unless it is plainly wrong or without evidence to support it." *Ellis v. Commonwealth*, 29 Va. App. 548, 554 (1999).

### B. *Jurisdiction*

Unger first argues that the circuit court lacked jurisdiction over this matter. She reasons that, because this is a criminal case with a minor victim, it could not be brought by direct indictment to the circuit court because Code § 16.1-241 vests "exclusive original jurisdiction" in J&DR courts over matters involving "[a]ny parent . . . of a child . . . [w]ho has been abused or neglected." Code § 16.1-241(F).[4] Accordingly, Unger reasons, the matter needed to be brought on appeal from a conviction in the district court under Code § 16.1-136 or certified as an ancillary misdemeanor under Code § 19.2-190.1.

---

[4] The Commonwealth's argument both on brief and at oral argument notwithstanding, Code § 16.1-241 appears in chapter 11, not within the same chapter as Code § 16.1-126, which is in chapter 7. As such, any argument that Code § 16.1-126 controls is inapposite.

The Supreme Court of Virginia has previously addressed the function of Code § 16.1-241 in the context of a direct indictment in *Payne v. Warden of Powhatan Correctional Center*, 223 Va. 180 (1982). There we held that, although Code § 16.1-241 "vests in [J&DR] courts exclusive original jurisdiction to conduct preliminary hearings in [certain] cases," *id.* at 182 (addressing "adult defendants charged with felonious offenses, except murder and manslaughter, committed against juvenile victims" (quoting *Jones v. Commonwealth*, 220 Va. 666, 669-70 (1980))), this jurisdiction does not extend to when a grand jury directly indicts a defendant. Instead, "where an adult accused is directly indicted by a grand jury, without having been previously arrested and charged, the jurisdiction of the circuit court is thereby invoked, and no preliminary hearing is required, even though the victim of the crime involved may be a juvenile." *Id.* at 184. That is because the "legislative purpose of Code § 16.1-241 is to afford juvenile defendants and juvenile victims the protection and expertise of the juvenile court during the preliminary, or certification, hearing stage of a criminal prosecution." *Id.* But where there is a direct indictment, those preliminary stages are not at issue, and there are "no protections or considerations that can be given a juvenile victim in a [J&DR] court that cannot be afforded in or commanded by a court of record following a grand jury's direct indictment of a defendant." *Id.*

Although *Payne* addressed direct indictments in the context of felony charges (there, rape, sodomy, and abduction), there is no logical reason to conclude that the reasoning articulated in *Payne* does not apply with equal force to misdemeanor charges—the question is what forum is best suited to provide "protection and expertise," and thus has jurisdiction, over "the preliminary, or certification, hearing stage of a criminal prosecution," *Payne*, 223 Va. at

184, which are not at issue when a defendant is directly indicted. The answer to that question does not meaningfully change based upon the range of punishment that the court may impose.[5]

Unger instead relies on *Jones*, 220 Va. at 666, and *Pope v. Commonwealth*, 19 Va. App. 130 (1994), *superseded by statute*, 1996 Va. Laws ch. 914, *as recognized in Burke v. Commonwealth*, 29 Va. App. 183 (1999). Yet neither of these cases involved a direct indictment. In *Jones*, the defendant received a preliminary hearing in the general district court and was subsequently tried in the circuit court. *Jones*, 220 Va. at 666. However, it became clear during trial that the victim was 17 at the time of the offenses, so the indictments were dismissed, Jones was recharged, appeared for a preliminary hearing in the J&DR court, and reindicted. *Id.* at 667-68. Jones appealed on the grounds of double jeopardy. We affirmed his convictions, concluding that jeopardy did not attach at the general district or initial circuit court proceeding, because "'exclusive original jurisdiction' in Code § 16.1-241 must be given its plain meaning," *id.* at 669-70, and the general district court, and subsequently the circuit court, did not have jurisdiction over that initial proceeding. In *Pope*, the defendant waived his right to a preliminary hearing in the general district court and the case was certified to the circuit court. *Pope*, 19 Va. App. at 131. Although Pope failed to timely object, we reversed, holding that the general district court could not certify an offense against a family or household member, which was within the J&DR court's exclusive jurisdiction under Code § 16.1-241(J). *Id.* at 133-34.[6]

---

[5] Moreover, to read Code § 16.1-241 as Unger presents it would directly conflict with Code § 19.2-239, which states that "[t]he circuit courts, except where otherwise provided, shall have exclusive original jurisdiction for the trial of all presentments, indictments and informations for offenses committed within their respective circuits."

[6] Subsequently, the "the legislature, when it enacted Code § 16.1-241(J), created an exception to the general rule that lack of subject-matter jurisdiction cannot be waived." *Burke*, 29 Va. App. at 190.

Crucially, neither *Jones* nor *Pope* involved a grand jury directly indicting a defendant. Our case law is clear that the "purpose of Code § 16.1-241 is to afford juvenile defendants and juvenile victims the protection and expertise of the juvenile court during *the preliminary, or certification, hearing stage of a criminal prosecution*." *Payne*, 223 Va. at 184 (emphasis added). Those stages are not at issue here. As such, given the significant differences between the pertinent facts in *Jones* and *Pope* as compared to Unger's, the reasoning in *Payne* holds here. Consequently, the circuit court had jurisdiction to hear Unger's case.

## C. *Sufficiency of the Evidence*

Unger next argues that the evidence was insufficient to support her conviction. Under Code § 18.2-371, it is a Class 1 misdemeanor to, inter alia, "willfully contribute[] to, encourage[], or cause[] any act, omission, or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected." Code § 16.1-228 defines an abused or neglected child, in pertinent part, as a child "[w]hose parent[ ] . . . creates a substantial risk of death, disfigurement or impairment of bodily or mental functions" or "[w]ho is without parental care or guardianship caused by the unreasonable absence or the mental or physical incapacity of the child's parent." Code § 16.1-228(1), (5). Criminal liability can attach regardless of whether a child actually experienced any harm. *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991) ("[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child.").

"In determining whether conduct constitutes criminal negligence, the Court applies an objective standard, and the test is whether the appellant 'knew or should have known the probable results of [her] acts.'" *Miller*, 64 Va. App. at 543-44 (alteration in original) (quoting *Jones v. Commonwealth*, 272 Va. 692, 701 (2006)). This analysis is "fact specific." *Id.* at 544. "The term 'willful act' imports knowledge and consciousness that injury will result from the act

done. The act done must be intended or it must involve a reckless disregard for the rights of another and will probably result in an injury." *Morris v. Commonwealth*, 272 Va. 732, 738 (2006) (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004)).[7] "Thus, the term 'willful'. . . contemplates an *intentional, purposeful* act or omission." *Id.* (emphasis added) (quoting *Commonwealth v. Duncan*, 267 Va. 377, 384-85 (2004)). "In short, a parent's act or omission is "willful". . . only if an objectively reasonable person would understand that injury to the child is likely to result." *Hannon v. Commonwealth*, 68 Va. App. 87, 94 (2017) (discussing Code § 18.2-371.1(B)(1)).

Unger contends that her acts and omissions here do not satisfy the "willful" requirement. We agree. Because these cases are fact-specific, there is no perfect analogy in the case law dealing with contributing to the delinquency of a minor. Nevertheless, we cannot say that Unger's conduct, viewed in the totality, amounted to a willful omission deserving of criminal punishment as contemplated by Code § 18.2-371.

Even accepting the Commonwealth's evidence, disregarding Unger's own testimony, and assuming the most neglectful version of events (thus setting aside the hypothesis that T.W. unlocked the door himself), Unger at most: (1) failed to completely secure a door lock and (2) did not wake up before T.W. did. T.W. had already absconded sometime prior to 7:00 a.m.,

---

[7] Much of the relevant case law on willfulness comes from cases addressing the felony child neglect statute, Code § 18.2-371.1. *See, e.g.*, *Morris*, 272 Va. at 740 (the defendant double-locked the door to her trailer before she and her two young children went to sleep, but the children awoke and went outside to play unsupervised). Although felony child neglect also involves a "willful act or willful omission," it also must be "so gross, wanton and culpable as to show a reckless disregard for human life," Code § 18.2-371.1, which is not required for a misdemeanor. Definitions of "willfulness" in cases involving Code § 18.2-371 have included definitions of willfulness from felony child neglect cases under Code § 18.2-371.1. *See, e.g.*, *Miller*, 64 Va. App. at 543-44, *Brown v. Commonwealth*, No. 1737-14-2, 2015 WL 4451457, at *5 (Va. Ct. App. July 21, 2015); *Wilmer v. Commonwealth*, No. 0654-16-3, 2017 WL 3707527, at *3 (Va. Ct. App. Aug. 29, 2017). Of course, "unpublished opinions are merely persuasive authority and not binding precedent." *Coffman v. Commonwealth*, 67 Va. App. 163, 172 n.7 (2017) (quoting *Baker v. Commonwealth*, 59 Va. App. 146, 153 n.3 (2011)).

leaving his mother asleep in his bed. The entire incident, from Martin noticing T.W. in her yard to his being returned to Unger, occurred within 20 minutes. To have made it off the property, T.W. also had to get through the gate of a fully fenced yard. Even considering Unger's being on notice of T.W.'s propensity to abscond, we cannot say that the law supports criminalizing a parent or guardian's failure to directly surveil their child every moment of a day. The facts here are a far cry from a case like *Miller*, in which we affirmed a conviction where the defendant "left her young child asleep in her car, double parked in a clearly marked fire lane, with the windows open, the engine running, and two dogs inside" outside a store for over an hour. *Miller*, 64 Va. App. at 544. Here, viewed in the light most favorable to the Commonwealth, Unger was home, sleeping in T.W.'s bed, when he snuck out. She possibly had failed to secure one of the house's door locks the night before. An objectively reasonable person would not say that this was a willful act or omission that created a "substantial risk" of harm to T.W., or that this amounted to an "unreasonable absence or the mental or physical incapacity" on the part of Unger. Code § 16.1-228. As such, her acts or omissions did not amount to her willfully contributing to the delinquency of a minor under Code § 18.2-371.

### III. CONCLUSION

Because the evidence was insufficient to prove a willful act or omission, the circuit court erred in finding Unger guilty of contributing to the delinquency of a minor. Accordingly, the conviction is reversed.

*Reversed and dismissed.*