COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges AtLee, Chaney and Frucci
Argued by videoconference


MANUEL ENRIQUE CASCO

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0626-24-4                      JUDGE RICHARD Y. ATLEE, JR.
                                                    MAY 6, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M. L. Saylor, Judge

John Primeau for appellant.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Manuel Enrique Casco of attempted

capital murder of a law enforcement officer[1] and use of a firearm in the commission of a felony.

Casco now appeals, challenging the sufficiency of the evidence on the grounds that one of the

Commonwealth's witnesses' testimony was inherently incredible.  Finding no error, we affirm.

I.  BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)).  That principle requires us to "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Effective July 1, 2021, the legislature abolished the death penalty in Virginia and
amended Code § 18.2-31 to refer to premeditated murder with specific aggravators, including the
murder of a law enforcement officer, as "aggravated murder" rather than "capital murder."  *See*
Code § 18.2-31(A)(6); *see also* 2021 Va. Acts Spec. Sess. I chs. 344, 345.

favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

Around 7:00 p.m. on September 2, 2019, Herndon Police Corporal Stephen Phelps was on duty, in full uniform, sitting in his marked police cruiser in a parking lot. Through the vehicle's open window, Phelps heard yelling and screaming in "some sort of incident" taking place behind where he was parked. An individual ran past the front of Phelps's cruiser. As that individual ran away, the screaming continued, and Phelps heard someone shouting "something to the effect of [m]y business, my business."

Believing that a robbery may have occurred, Phelps got out of his vehicle and pursued the individual. He then saw a second person also running through the parking lot. As Phelps rounded the corner onto the adjoining street, he saw the two individuals running side by side ahead of him. Although Phelps identified himself as a police officer and shouted multiple commands to stop, they continued to flee. While in pursuit, Phelps alerted dispatch over the radio.

As he chased them, Phelps saw the individual on the right—later identified as Casco—look back over his shoulder. Casco turned his head a second time, drew a handgun, and aimed it at Phelps. Phelps shouted "[g]un, gun, gun, gun! Put it down!" Casco then fired twice at Phelps. Phelps immediately returned fire with his .40 caliber Glock service weapon, discharging all 16 rounds. He did not see any sign that any of his shots struck Casco. Phelps reloaded his weapon but did not fire any more shots.

Casco and the other suspect—later identified as Edward Sandoval—then separated and ran in different directions. Phelps pursued Sandoval because Sandoval was "significantly closer" to him, and Phelps believed it was more likely he would be able to catch up to him. Phelps eventually

took Sandoval into custody with the assistance of off-duty police officers. Other officers subsequently arrested Casco in a nearby parking lot.

Crime scene detectives recovered sixteen .40 caliber cartridge casings, a magazine, two .45 caliber cartridge casings, and a .45 caliber Taurus handgun from the scene. Forensic analysis determined that the sixteen .40 caliber casings were fired from Phelps's service weapon, and the two .45 caliber casings were fired from Casco's Taurus handgun.

While investigating the shooting, Fairfax County Police Detective Nicole Christian listened to recordings of Casco's jail calls. During one call, Casco told the mother of his child that he "got into a shootout with the police." Later in the same call, she asked him "[s]o you were shooting at the police?" Casco replied "Mmm hmm."

The Commonwealth subsequently charged Casco with attempted carjacking, robbery, multiple counts of robbery and abduction, attempted capital murder of a law enforcement officer, and use of a firearm in the commission of each underlying felony. Under the terms of a written agreement, Casco pleaded guilty to two counts of robbery, use of a firearm in the commission of robbery, and attempted carjacking. In return, the Commonwealth agreed to nolle prosequi two counts of abduction and two counts of use of a firearm in the commission of a felony.

Casco proceeded to jury trial on the remaining counts of attempted capital murder of a law enforcement officer and use of a firearm in the commission of that attempt. His first trial resulted in a mistrial because the jury failed to reach a verdict on either count. At his second jury trial, Casco stipulated that the Taurus handgun belonged to him, that he used the Taurus handgun during the robbery, and that "it was the gun he fired when Corporal Phelps was chasing him after the robberies." During Phelps's testimony, the Commonwealth played video of the chase recorded by his body-worn camera. Phelps testified that, based on his law enforcement training, the use of deadly force required a clear and present threat to officers or members of the public. Although this

policy did not require an officer to be fired upon before using deadly force, Phelps unequivocally stated that he did not fire his weapon at Casco until after Casco first shot at him. Phelps explained that he returned fire when he "heard [Casco's] first shot." He then heard Casco fire a second shot at him.

On cross-examination, defense counsel questioned Phelps regarding statements he made about the shooting during the police department's internal investigation and under oath at Casco's first trial. Phelps testified that while he saw Casco aim the weapon and heard him fire twice, he did not see a muzzle flash when Casco shot.

After the Commonwealth rested, Casco moved to strike the evidence for both charges. He asserted that the evidence was "in serious conflict" and that the body camera video failed to show that Casco, rather than Phelps, fired first. The trial court denied the motion, concluding that a rational jury could credit Phelps's testimony, including "that he saw [Casco] turn and point" at Phelps and "shoot the gun at him." Casco testified that he had consumed alcohol and PCP on the day of the robbery. He explained that he ignored Phelps's commands to stop because he had "just committed a crime and robbed the place," so he was "just trying to get away."

Casco further testified that he had the Taurus handgun in his waistband at the start of the chase. The firearm kept falling out of his waistband as he ran, so he held it with his right hand as he ran. "[A] few seconds" after he took the gun out, he heard "[a] bunch of shooting." He testified it was "like a hundred something rounds [were] being fired at [him.]" Two bullets "grazed" his shoulder and the top of his head, respectively. He then "panicked," and his "gun discharged." Casco insisted that he not shoot first, that he "never intended to shoot [his] gun," and that his only intention was to "try to run away."

After the close of all the evidence, Casco renewed his motion to strike, and the trial court denied the motion. The jury convicted Casco on both counts. Casco received a total sentence of 30

years' incarceration with 15 years suspended.  Casco now appeals, arguing that the evidence was insufficient to sustain his convictions because Phelps's testimony was inherently incredible as a matter of law.

## II. ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment . . . .'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Casco contends that Phelps's testimony was inherently incredible, and therefore, the evidence was insufficient to support his convictions for attempted capital murder of a law enforcement officer and use of a firearm in the commission of that felony.[2]  Without that testimony, he argues, the Commonwealth could not show that Casco fired first, or that he intended to shoot at Phelps.  We disagree with Casco's contention that the evidence was inherently incredible and find the evidence sufficient to support his convictions.

---

[2] "The willful, deliberate, and premeditated killing of a law-enforcement officer . . . for the purpose of interfering with the performance of his official duties" constitutes "aggravated murder, punishable as a Class 1 felony."  Code § 18.2-31(A)(6).  A person who "attempts to commit an offense that is punishable as a Class 1 felony . . . is guilty of a Class 2 felony."  Code § 18.2-25.  As relevant here, use or attempting to use a firearm to "attempt[] to commit murder" constitutes a "separate and distinct felony."  Code § 18.2-53.1.

"[D]etermining the credibility of witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, this Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "[W]e may only disturb the trial court's credibility determination if the evidence is 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Lopez v. Commonwealth*, 73 Va. App. 70, 84 (2021) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable [people] ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable [people] should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

At trial, Casco affirmatively told the jury that he committed an armed robbery and that during the subsequent chase, he "panicked," and his Taurus handgun fired twice. Phelps testified that he saw Casco turn his head, aim the Taurus handgun at him, and fire. Phelps then returned fire, discharging 16 rounds from his service weapon. The physical evidence recovered corroborates this narrative, with 2 casings from Casco's Taurus .45 caliber weapon, and 16 casings from Phelps's .40 caliber service weapon.

There is nothing inherently incredible about Phelps's testimony. The fact that Casco's account differed from Phelps's is immaterial. The jury heard both Phelps's and Casco's versions of the shooting; it also viewed the body camera footage. The jury was able to review that evidence and weigh each witness's credibility, and as part of that inquiry, it was "entitled to disbelieve the

self-serving testimony of the accused and to conclude that [he wa]s lying to conceal his guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998). Essentially, it was for the jury—not the trial court or this Court—to decide whose version of events was more credible and supported by the evidence. By finding Casco guilty of attempted capital murder of a law enforcement officer, the jury inherently found Phelps's account more credible, and we will not disturb that finding on appeal.

Casco's assertion that Phelps made prior inconsistent statements about the shooting does not change this conclusion. To the dubious extent there even were any meaningful prior inconsistent statements, they were proper fodder for cross-examination and closing argument. Inconsistent statements alone do "not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Rather, "[t]his circumstance is appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*; *see also Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) ("[T]he mere fact that a witness'[s] testimony may have been impeached does not necessarily render the testimony inherently incredible."). Here, any alleged inconsistencies in Phelps's testimony were not "so manifestly false that reasonable [people] ought not to believe it," nor otherwise "shown to be false." *Gerald*, 295 Va. at 487 (quoting *Juniper*, 271 Va. at 415). Therefore, there is no basis for this Court to find error in the jury's credibility determinations or its assessment of the evidence. Accordingly, the trial court did not err in upholding the jury verdict and convicting Casco on both counts.

### III. CONCLUSION

For the foregoing reasons, we find no error and affirm Casco's convictions.

*Affirmed.*